UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

PAMELA B.[1],                                    )
                                                 )
            Plaintiff,                           )
                                                 )
v.                                               )        CIVIL NO. 2:20cv340
                                                 )
ANDREW M. SAUL,                                  )
Commissioner of Social Security,                 )
                                                 )
            Defendant.                           )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for a period of

disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and for

Supplemental Security Income (SSI) under Title XVI of the Act..  Section 205(g) of the Act

provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the

transcript of the record including the evidence upon which the findings and decision complained

of are based.  The court shall have the power to enter, upon the pleadings and transcript of the

record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the case for a rehearing."  It also provides, "[t]he findings of the

[Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42

U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law

2

Judge ("ALJ") made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.

2.    The claimant has not engaged in substantial gainful activity since July 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift/carry and/or push/pull 10 pounds occasionally and less than 10 pounds frequently. The claimant can stand/walk for 2 hours in an eight-hour workday. The claimant can sit for 6 hours in an eight-hour workday. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant should have no exposure to uneven surfaces, vibration, unprotected heights, or moving mechanical parts. The claimant is limited to occasional exposure to dust, fumes, odors, gases, and poor ventilation. The claimant should have no exposure to extreme heat as part of the job duties.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on June 25, 1971 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the

claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR. 29-36 ).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits.

The ALJ's decision became the final agency decision when the Appeals Council denied review.

This appeal followed.

Plaintiff  filed her opening brief on March 30, 2021.  On May 11, 2021 the defendant filed

a memorandum in support of the Commissioner's decision to which Plaintiff replied on June 9.

Upon full review of the record in this cause, this court is of the view that the Commissioner's

decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See*

*Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-

91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test

as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is

4

disabled.  A negative answer at any point, other than step 3, stops
the inquiry and leads to a determination that the claimant is not
disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162
n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).  From the nature
of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff was diagnosed with paraspinal muscle spasm, lumbosacral radiculopathy, lumbar
degeneration, multilevel cervical spondylosis, chronic pain syndrome, chronic midline low back
pain, and anxiety. (AR. 332, 498, 514-15). A March 16, 2017 x-ray of her lumbar spine showed
disc space narrowing, and an x-ray of the cervical spine showed multilevel spondylitic change with
disc space narrowing and anterior spurring. (AR. 331). She had diminished lumbar spine flexion of
45 degrees and cervical, thoracic, and lumbar tenderness to palpation. (AR. 332).

On April 20, 2017, Plaintiff had diminished lumbar flexion of 45 degrees and extension of
10 degrees and cervical spine pain with range of motion in all directions. (AR. 333). A July 25,
2017 MRI of the lumbar spine showed severe disc degeneration with endplate changes and severe
facet hypertrophy bilaterally, and an MRI of the cervical spine showed multilevel spondylosis with
disc bulging and foraminal stenosis. (AR. 335). She had lumbar and cervical spine pain on range of
motion and ongoing neck and mid and low back pain. (AR. 336). Plaintiff had lumbar and cervical
spine pain and diminished range of motion (AR. 339); diminished sensation through the left thumb
(AR 342); cervical spondylosis (AR. 358); lumbar spine degenerative endplate changes, disc
desiccation, diffuse disc bulge, and foraminal narrowing (AR. 360); lumbar spine diminished range
of motion (AR. 367, 376); musculoskeletal tenderness to palpation (AR. 373, 379, 382, 385, 388,

394, 400, 406, 409, 415, 433, 436, 444, 451, 454, 458, 461, 464, 468, 471, 481, 485, 492, 495);

lumbar and cervical spine diminished range of motion, pain, and spasms (AR. 498, 502, 506, 510,

514, 518, 522, 623, 627, 631, 635, 639, 643, 647, 650, 654, 658, 662, 666, 693, 697, 701, 705);

lumbar spine diminished range of motion, pain, and spasm (AR. 709, 713, 717, 722, 726, 730,

734, 742, 746, 751); slow gait, difficulty with heel to toe walk, poor stamina, apparent pain

walking within examination room, and positive straight leg test (AR. 684); right shoulder

deformity and diminished range of motion (AR. 812); AC joint separation (AR. 815); and anxious

mood upon examination (AR. 366, 369, 381, 396, 409, 442, 444, 454, 468, 478, 478, 650, 662,

705, 751).

     Plaintiff still suffered pain despite trying trigger point injections (AR. 58, 607, 614) and

opioid medication (AR. 57, 59, 223, 263. Her medication caused dizziness and sleepiness. (AR.

57, 263). During a typical day, she ate breakfast, watched television, tried to wipe down the table

or the stove, and lied down. (AR. 65). However, she could not watch a 30-minute TV show

without being distracted. (AR. 63). She could not wash dishes, her daughter helped her shower

and comb her hair, and she could not stand long enough to cook. (AR. 65, 236-38).

     In support of remand, Plaintiff first argues that the ALJ did not evaluate her allegations in

accordance with SSR 16-3p, and that the ALJ erred in evaluating Plaintiff's activities of daily

living. The ALJ stated that Plaintiff "mostly watches television during the day," "tries to help wipe

things down after meals, can make trip trips to the store, drive for short periods of time, and she

enjoys to read," and concluded that Plaintiff's alleged symptoms were "not entirely consistent"

with the record. (AR. 33). However, the ALJ was required to explain how Plaintiff's statements

about activities of daily living were inconsistent with the record. *See Zurawski v. Halter*, 245 F.3d

881, 887 (7th Cir. 2001) (The ALJ must explain the 'inconsistencies' between alleged activities of daily living, other allegations, and the objective evidence). Here, the ALJ simply listed Plaintiff's alleged activities of daily living. (AR. 33). No analysis was provided. Since the ALJ failed to evaluate whether Plaintiff's statements about activities of daily living were consistent with her other allegations and the objective evidence, Plaintiff requests the claim be remanded for further proceedings. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

In response, the Commissioner contends that the ALJ did not err in evaluating Plaintiff's activities of daily living because the ALJ summarized some of these activities. However, the ALJ was required to discuss whether Plaintiff's statements about activities of daily living were consistent with her alleged symptoms and the medical evidence. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). "A mere summary is not the same as meaningful analysis." *William B. v. Saul*, No. 18 CV 50083, 2019 WL 4511544, at *5 (N.D. Ill. Sept. 19, 2019). Thus, the Commissioner's contention fails.

Plaintiff also argues that the ALJ erred in evaluating the objective medical evidence. The ALJ found Plaintiff's alleged symptoms "not entirely consistent" with the record because "[w]hile diagnostic testing has shown significant degenerative changes in the claimant's cervical and lumbar spine, the claimant's physical examinations reported overall normal functioning" and "[a]lthough limited motion, with tenderness and pain, were observed, the claimant maintained full strength and the ability to ambulate unassisted." (AR. 33). However, Plaintiff repeatedly had abnormal findings upon examination. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected).The ALJ did not explain how

7

examinations were "normal" where Plaintiff regularly had musculoskeletal tenderness to palpation and diminished range of, motion, pain and spasms of the lumbar and cervical spines.

Plaintiff maintains that the ALJ also failed to explain why normal strength and ambulation were more relevant to Plaintiff's overall functioning than musculoskeletal tenderness to palpation and diminished range of motion, pain, and spasms of the lumbar and cervical spines. *See Zurawski v. Halter*, 245 F.3d at 887 (The ALJ is required to explain why unfavorable evidence is more probative/valuable than evidence favorable to Plaintiff's claim).

The Commissioner responds that "the ALJ appropriately considered all of the evidence" because the ALJ summarized evidence both in support of and against a finding of disability However, as noted, the ALJ was required to explain why evidence of normal findings were more probative than evidence supporting a finding of disability. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) (Remanding because "[a]n ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence"). Here, the ALJ failed to explain how "normal" examinations were more probative than examinations showing musculoskeletal tenderness to palpation and diminished range of motion, pain, and spasms of the lumbar and cervical spines. (AR. 33). Thus, again, the Commissioner's assertion is unavailing.

Plaintiff also claims that the ALJ erred in evaluating Plaintiff's treatment history. The ALJ found Plaintiff's alleged symptoms "not entirely consistent" with the record because she had "mostly received conservative and routine treatment." (AR. 33). An "ALJ may 'consider conservative treatment in assessing the severity of a condition,' but should cite medical evidence about what kind of treatment would be appropriate." *Martinez v. Astrue*, No. 2:10 CV 370 PRC,

2011 WL 484252 at *8 (N.D. Ind. Oct. 11, 2011). However, an ALJ may not speculate about the type of treatment that a claimant should have received based on nothing more than his own lay intuition. *Myles v. Astrue*, 582 F.3d at 677.  Further, Plaintiff testified that her doctor ordered surgery at the time of the hearing, but she had not been approved by worker's compensation insurance yet. (AR. 58). *See Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014)(remanding because "the ALJ was inappropriately selective in choosing the evidence on which she based her opinion").

Additionally, Plaintiff points out that while the ALJ mentioned that "she mainly receives medication management for her symptoms, and has received injections and undergone physical therapy" (AR. 32), the ALJ failed to provide a discussion explaining whether Plaintiff's alleged symptoms and limitations were consistent with her medical treatment. (AR. 33). *See* SSR 16-3p (We will discuss "treatment, other than medication" and the "type, dosage, effectiveness, and side effects of any medication"). Despite trying trigger point injections (AR. 58, 607, 614) and opioid medication (AR. 57, 59, 223, 263) to alleviate her pain and symptoms, Plaintiff still suffered pain. Plaintiff argues that the ALJ should have discussed how undergoing this treatment lent credence to Plaintiff's alleged symptoms. Also, the ALJ did not explain why Plaintiff's doctors and nurse practitioners would prescribe her opioid medication if they did not believe that her symptoms were genuine. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)(it is unlikely that an individual would "fool a host of doctors" to prescribe strong prescription medication simply to bolster an application for disability insurance benefits).

Plaintiff further points out that the ALJ failed to mention that Plaintiff's medication caused dizziness and sleepiness. (AR. 57, 263). *See Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir.

9

2004) (The ALJ was required to evaluate the "type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms").

The Commissioner argues that the ALJ did not err in finding Plaintiff's treatment to be conservative because the ALJ "appropriately remarked" that she received pain management, injections, and attend physical therapy. The Commissioner asserts that the ALJ reasonably characterized Plaintiff's treatment as conservative. However, the Commissioner does not explain why that was reasonable. Plaintiff notes that the Commissioner's defense seems to be that if the ALJ made a finding, that finding was reasonable. *See Lopez v. Berryhill*, 340 F.Supp.3d at 704 (Remanding because the "*ipse dixit* approach is hopelessly at odds with the logical bridge requirement").  Here, the ALJ identified no evidence that additional treatment was available or appropriate given Plaintiff's impairments. Nor did the Commissioner respond to Plaintiff's argument that Plaintiff's doctor had ordered surgery at the time of the hearing, but she had not been approved by worker's compensation insurance yet. (AR. 58).

Further, despite the Commissioner's contention, trigger point injections (AR. 58, 607, 614) and opioid medication (AR. 57, 59, 223, 263) do not constitute conservative treatment. *See Schomas v. Colvin,* 732 F.3d at 709 (Contrasting `conservative' treatment like over-the-counter medication with `more aggressive' treatment like prescription narcotics and steroid injections).

Plaintiff also contends that the ALJ erred by failing to assess "State agency medical and psychological consultants'. . . findings" when "evaluating the intensity, persistence, and limiting effects of the individual's symptoms." SSR 16-3p. The DDS consultants opined that Plaintiff's "statements about the intensity, persistence, and functionally limiting effects of [her] symptoms [were] substantiated by the objective medical evidence alone." (AR. 82, 92, 106, 119). The ALJ

10

failed to mention that the DDS consultants stated that Plaintiff's allegations were consistent with the objective medical evidence in the subjective complaint analysis. (AR. 32-34). Plaintiff testified that she would lie down during a typical day. (AR. 65, 236). Plaintiff contends that if her allegations were supported by the objective medical evidence, the ALJ should have adopted her alleged limitations into her RFC. *See Herron v. Shalala*, 19 F.3d at 333 ("[T]he ALJ's decision must be based upon consideration of all the relevant evidence, and" "the ALJ [must] articulate reasons for accepting or rejecting entire lines of evidence").

The Commissioner, however, argues that the DDS consultants' statement that Plaintiff's "allegations were credible does not affect the ultimate non-disability finding" because the DDS consultants found that she could work at the light exertional level. The Commissioner is conflating the DDS consultants' assessment of Plaintiff's functional capacity with their assessment of her credibility. The fact that the DDS consultants thought Plaintiff could work at the light exertional level has no bearing on their opinion that she did not exaggerate her alleged symptoms.

Plaintiff next argues that the ALJ erred in assessing the third-party statements of AW, Plaintiff's sister. The ALJ stated that he "considered the Third Party Function Report provided by the claimant's sister." (AR. 34). No analysis was provided. Non-medical opinions provide insight into the "severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-3p, (citing 20 C.F.R. § 416.913). AW stated that Plaintiff lied down in bed all day, needed help dressing, bathing, and caring for her hair, and could not stand long enough to prepare meals. (AR. 228-30). Plaintiff argues that the ALJ should have identified which statements he accepted, which statements he rejected, and explained his reasoning for accepting or rejecting AW's statements. *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013). Plaintiff concludes that

11

had the ALJ properly analyzed AW's statement, he may have concluded that Plaintiff was unable to sustain the requirements of sedentary work.

In response, the Commissioner claims that "[a]ny error in not elaborating further on AW's statement is harmless because the ALJ addressed the issues she raised in relation to his consideration of Plaintiff's testimony and reports." As Plaintiff points out, the Commissioner's argument is based on a mistake of fact. AW stated that Plaintiff needed to lie down during the day. (AR. 228). The ALJ failed to assess whether Plaintiff's need to lie down was consistent with the record. (AR. 32-34). Therefore, the Commissioner's argument is unavailing.

In accordance with the above discussion, this Court remands the Decision for an appropriate evaluation of Plaintiff's allegations and activities of daily living.

Next, Plaintiff argues that the ALJ did not evaluate the RFC in accordance with SSR 96-8p. As noted, the ALJ found that Plaintiff could perform work at the sedentary exertional level except she could occasionally lift, carry, push, and/or pull 10 pounds; frequently lift, carry, push, and/or pull less than 10 pounds; sit for six hours in an eight-hour workday; stand or walk for two hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (AR. 32). The ALJ was required to provide a basis in the record for this specific RFC finding. *See* SSR 96-8p. Although the ALJ need not rely on a medical opinion to determine the RFC, the ALJ was not qualified to interpret raw medical data. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves").

Here, the ALJ stated that the RFC was "supported by the record, the persuasive opinions

12

noted above, and the claimant's reports insofar as those are consistent with the record." (AR. 34).

However, the ALJ found the opinions of the Disability Determination Services (DDS) consultants

"unpersuasive." (AR. 34). The DDS consultants opined that Plaintiff could work at the light

exertional level, except she could occasionally climb ramps and stairs, balance, stoop, kneel,

crouch, and crawl; and never climb ladders, ropes, or scaffolds. (AR. 82-83, 92-93, 106-07,

119-20). Since the ALJ's finding differed substantially from the opinions of the DDS consultants,

their opinions could not be used as a basis for the RFC finding. *See Parker v. Astrue*, 597 F.3d

920, 924-25 (7th Cir. 2010)(a decision cannot be upheld with significant contradictory conclusions

by the ALJ). Plaintiff's treating physician Cary Templin, M.D. limited her to sedentary work, but

stated that she could only sit, stand, and walk as comfort allowed, and never lift more than five

pounds. (AR. 332, 334, 336). The ALJ found Dr. Templin's opinion "somewhat persuasive" and

rejected his opined lifting, sitting, standing, and walking limitations. (AR. 34).  The ALJ also

found that Plaintiff's alleged symptoms were "not entirely consistent" with the record. (AR. 33).

Plaintiff argues that, given that (1) the RFC finding differed substantially from the opinions of

DDS consultants, (2) the RFC finding differed substantially from the opinion of Dr. Templin, and

(3) the ALJ found the medical evidence not supportive of Plaintiff's testimony, the ALJ was left

with evidentiary deficit that he could not reasonably fill with his lay medical opinion. *See Suide v.*

*Astrue*, 371 F. App'x. 684, 690 (7th Cir. 2010) (Remanding because after rejecting all relevant

medical opinions and plaintiff's testimony, the ALJ created a situation where the RFC could only

be supported by her interpretation of medical findings).

     In response, the Commissioner takes the position that the ALJ did not create an evidentiary

deficit and fill it with his own lay medical determinations because "the final responsibility for

determining the RFC and disability lie with the ALJ."  Plaintiff agrees that it is the sole

responsibility of the ALJ to assess the RFC. *See* 20 C.F.R. § 404.1546(c). However, the ALJ was

not qualified to interpret raw medical data.  *Moon v. Colvin,* 763 F.3d 718, 722 (7th Cir. 2014).

Because the RFC finding differed substantially from the opinions of the DDS consultants and the

opinion of Dr. Templin, their opinions could not be used as a basis for the RFC finding. *Parker v.

Astrue*, 597 F.3d 920, 924-25 (7th Cir. 2010). The ALJ also found the medical evidence not

supportive of Plaintiff's testimony. (AR. 33). Thereafter, the ALJ was left with evidentiary deficit.

The ALJ then erred by filling that evidentiary deficit with lay medical determinations.  *Stage v.

Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (Holding that ALJs are not qualified to determine the

significance of objective medical findings and must rely on expert opinion).

    The Commissioner argues that no regulatory authority requires that the "ALJ must submit

later-submitted evidence to the State agency for an updated initial or reconsideration

determination." However, Plaintiff made no such argument. Rather, Plaintiff argued that if ALJ

disagreed with the opinions of the DDS consultants and believed that the evidence supported

greater functional restrictions then, logically, the ALJ should have called a medical expert to

provide an opinion based on all relevant evidence.  Instead, the ALJ made a series of lay medical

determinations.  *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) ("If the ALJ was concerned

that the medical evidence was insufficient to determine whether Mr. Smith was disabled, he should

have ordered more recent X-rays").  The Commissioner contends that Plaintiff's arguments

essentially ask this Court to re-weigh the medical evidence.  However, it is clear that Plaintiff

requests remand because the ALJ never weighed this evidence or explained how it supported the

RFC finding. This Court agrees with Plaintiff.

Plaintiff also argues that the ALJ failed to assess whether Plaintiff's alleged need to lie down was consistent with the record. (AR. 32-34). *See Myles v. Astrue*, 582 F.3d 672, 676-77 (7th Cir. 2009)(remanding because "[t]he ALJ acknowledged [Plaintiff's] complaints [of fatigue], but his analysis does not articulate his reasons for rejecting them"). Plaintiff testified that she would lie down during a typical day. (AR. 65, 236). Plaintiff's sister, AW stated that Plaintiff was in bed before she went to work and after she got home. (AR. 228). Since Plaintiff alleged she suffered a work-related functional restriction, the ALJ was required to explain how evidence either supported or failed to support the alleged restriction. *See* SSR 96-8p ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific" evidence). Here, the ALJ failed to mention Plaintiff's alleged need to lie down. (AR. 32-34). Since Plaintiff frequently sought treatment for and was found to be in pain, the ALJ should have assessed whether she needed to lie down and determined how long or how frequently she needed to lie down.  The VE testified that being off-task more than 10 percent of the workday would preclude all competitive employment. (AR. 71). If Plaintiff lied down as much as she alleged, she would have been off-task at levels higher than tolerated in a competitive work environment.  *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013)(remanding because "no employer is likely to hire a person who must stop working and lie down").

The Commissioner asserts that the ALJ did not err in failing to discuss Plaintiff's need to lie down because "[i]t was not the ALJ's burden to disprove Plaintiff's allegations. Rather, it was Plaintiff's burden to establish the existence of functional limitations and prove disability." However, Plaintiff met her burden of proof by testifying that she would lie down during a typical day. (AR. 65, 236). Also, AW stated that Plaintiff lied down in bed all day. (AR. 228). Since the

medical record established that Plaintiff suffered pain, her testimony should have been sufficient to determine the limiting effects of her pain. *Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011).

Plaintiff next argues that the ALJ erred by failing to discuss off-task time, absenteeism, and a sit-stand option in the RFC analysis. As noted, Plaintiff laid down during a typical day (AR. 65, 228, 236), her social interactions were limited by her difficulty standing and sitting (AR. 241), she could stand for 15 minutes (AR. 51), her daughter helped her shower (AR. 230, 236), she could not stand long enough to cook (AR. 230, 238), she could only sit for 20 to 30 minutes before needing to alternate positions. (AR. 50, 73), she needed to alternate positions while watching television. (AR. 232), and she had difficulty completing tasks. (AR. 241).

The VE testified that being off-task more than 10 percent of the workday, absent more than one day per month, or needing to alternate between sitting and standing every 15 minutes and requiring two minutes to adjust positions would eliminate all competitive employment opportunities. (AR. 71, 73). Here, the ALJ did not mention off-task time, absenteeism, or a sit-stand option in the RFC analysis. (AR. 32-34). The ALJ was required to address strong evidence favorable to Plaintiff's claim. *Sayles v. Barnhart,* No. 00 C 7200, 2001 WL 1568850, at *9 (N.D. Ill. Dec. 7, 2001). The ALJ should have discussed off-task time, absenteeism, and a sit-stand option in the RFC analysis because the limitations were credibly established by the evidence and the VE produced evidence favorable to the Plaintiff on the issue. *See Kukec v. Berryhill*, No. 16-9805, 2017 WL 5191872 at *3 (N.D. Ill. Nov. 9, 2017)(reversing because ALJ did not discuss off-task time in the RFC analysis when impairments could cause Plaintiff to be off-task and "ALJ pointedly solicited from the VE his opinions concerning Plaintiff's off-task time"). The ALJ was required to, at a minimum, discuss the VE's testimony concerning off-task

16

time, absenteeism, and a sit-stand option in the RFC analysis and explain why, given Plaintiff's

need to lie down, anxiety, musculoskeletal tenderness to palpation, and degenerative changes,

diminished range of motion, pain, and spasms of the cervical and lumbar spines, Plaintiff would not

be off-task more than 10 percent of the day, absent more than one day per month, or would not

need to alternate between sitting and standing. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In response the Commissioner argues that the ALJ did not err in failing to discuss off-task

time, absenteeism, or a sit-stand option because Plaintiff cited two nonprecedential opinions.

However, as Plaintiff points out, the Commissioner cites a nonprecedential opinion in support of

his contention and ignores two precedential cases Plaintiff cited in support of her argument.

Clearly, the ALJ should have discussed off-task time, absenteeism, and a sit-stand option in the

RFC analysis because the limitations were credibly established by the evidence and the VE

produced evidence favorable to the Plaintiff on the issue. *Crump v. Saul*, 932 F.3d 567, 570 (7th

Cir. 2019).

The Commissioner contends that the ALJ did not err in failing to discuss off-task time,

absenteeism, or sit-stand option because "Plaintiff's alleged need for such limitations rest either

on uncritical acceptance of Plaintiff's allegations, on opinion evidence that the ALJ did not fully

accept, or are otherwise unsupported by the evidence of record." However, as Plaintiff correctly

notes, the Commissioner is limited to defending the ALJ's findings with rationales used by the

ALJ. *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Hughes v. Astrue*, 705 F.3d 276, 279 (7th

Cir. 2013) ("Characteristically. . .the government's brief violates the *Chenery* doctrine"); *Hanson

v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) (collecting cases concerning Court's rejection of

Commissioner's reliance on post hoc rationalization in violation of *Chenery*). Here, the ALJ did

17

not discuss off-task time, absenteeism, or sit-stand option and therefore, did not use this rationale

for rejecting these limitations. Since the ALJ did not discuss off-task time, absenteeism, or

sit-stand option, the Commissioner engaged in post-hoc rationalization and this argument will not

be considered. *Steele v. Barnhart,* 290 F.3d 936, 941 (7th Cir. 2002).

In light of the above discussion, remand is warranted on the issues Plaintiff raises related to

the ALJ's evaluation of Plaintiff's RFC.

Next, Plaintiff argues that the ALJ erred in evaluating the medical opinion of Cary

Templin, M.D.  Plaintiff contends that the ALJ did not properly assess the supportability and

consistency of Dr. Templin's opinion. Dr. Templin stated that Plaintiff was limited to sedentary

work as she could only sit, stand, and walk as comfort allows and never lift more than five pounds.

(AR. 332, 334, 336). The ALJ found the opinion of Dr. Templin "somewhat persuasive" and

rejected Dr. Templin's opined lifting limitations and postural tolerances because a "lifting

limitation of no more than 5 pounds is inconsistent with the record" and "limitations for the

claimant to sit, stand, and walk as comfort allows" was "vague and does not provide specific

limitations." (AR. 34).

The ALJ was required to provide a "sound" reason for finding Dr. Templin's opinion not

persuasive. Plaintiff notes that to the extent that the ALJ believed that upper and lower extremity

weakness needed to be present for Dr. Templin's opined limitations to be medically supported, the

ALJ's belief constituted a lay medical interpretation. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th

Cir. 1996).  The ALJ did not explain why degenerative changes, diminished range of motion, pain,

or spasms of the cervical and lumbar spines could not have affected Plaintiff's ability to lift. (AR.

34). *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) ("ALJs must sufficiently articulate their

18

assessment of the evidence to assure us that they considered the important evidence and . . . to enable us to trace the path of their reasoning"). Nor was the ALJ qualified to may such a determination. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016).

As noted, the ALJ rejected Dr. Templin's opined postural tolerances because "limitations for the claimant to sit, stand, and walk as comfort allows" was "vague and does not provide specific limitations." (AR. 34). An ALJ may not reject a medical opinion simply because it is not phrased in vocationally-specific terminology. *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004)(If the ALJ was concerned about what plaintiff's doctors were "thinking" she should have contacted them for clarification), (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). If the ALJ thought that Dr. Templin's opinion lacked specificity then, logically, the ALJ should have contacted Dr. Templin for clarification rather than simply dismissing the opinion altogether. *Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004). If the ALJ needed to know what specific postural tolerances, Dr. Templin could have provided that information had the ALJ asked. *See Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000)(holding that the ALJ should have "summon[ed] a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled").

Plaintiff points out that the ALJ did not comply with the requirements of 20 C.F.R. § 404.1520c, the regulation that applies to weighing opinion evidence, in evaluating whether Dr. Templin's opinion was persuasive. The ALJ was required to explain how he considered the supportability and consistency of Dr. Templin's opinion. *See* 20 C.F.R. § 404.1520c(b)(2) ("[T]he most important factors we consider when we determine how persuasive we find a medical source's medical opinions" are supportability and consistency). On March 16, 2017, Dr. Templin reviewed

19

an x-ray of the lumbar spine showing disc space narrowing and an x-ray of the cervical spine showing multilevel spondylitic change with disc space narrowing and anterior spurring. (AR. 331). Dr. Templin noted diminished lumbar spine flexion of 45 degrees and cervical, thoracic, and lumbar tenderness to palpation. (AR. 332). On April 20, 2017, Dr. Templin noted diminished lumbar flexion of 45 degrees and extension of 10 degrees and cervical spine pain with range of motion in all directions. (AR. 333). On July 25, 2017, Dr. Templin reviewed an MRI of the lumbar spine showing severe disc degeneration with endplate changes and severe facet hypertrophy bilaterally and an MRI of the cervical spine showing multilevel spondylosis with disc bulging and foraminal stenosis. (AR. 335). Dr. Templin noted lumbar and cervical spine pain on range of motion and ongoing neck and mid and low back pain. (AR. 336). Diagnostic testing showing degenerative changes of the lumbar and cervical spine, diminished range of motion of the lumbar spine, neck pain on range of motion, and neck and back pain on examination support Dr. Templin's opined lifting limitations and postural intolerances. The ALJ did not explain whether Dr. Templin's examination findings supported his opinion. (AR. 34).

Plaintiff argues that degenerative changes of the lumbar and cervical spine, musculoskeletal tenderness to palpation, slow gait, difficulty with heel to toe walk, poor stamina, apparent pain walking within examination room, AC joint separation, and diminished range of motion, pain, and spasms of the lumbar and cervical spines are consistent with Dr. Templin's opined lifting limitations and postural intolerances. Yet, the ALJ failed to explain why Dr. Templin's opined lifting limitations and postural intolerances were not consistent with the record where examinations of Plaintiff's cervical and lumbar spines repeatedly demonstrated diminished range of motion, pain, and spasms. (AR. 34). *See Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir.

20

2018) ("ALJs are not permitted to cherry-pick evidence from the record to support their

conclusions, without engaging with the evidence that weighs against their findings"). Plaintiff

concludes that the ALJ should have discussed whether Dr. Templin's opined lifting limitations and

postural intolerances were consistent with this other evidence of record. *See Godbey v. Apfel*, 238

F.3d 803, 808 (7th Cir. 2000) (The ALJ must minimally discuss opinion evidence which

contradicts the Commissioner's position).

      The Commissioner asserts that the ALJ properly found Dr. Templin's statement that

Plaintiff could lift no more than five pounds inconsistent with clinical findings showing that

Plaintiff had full strength in the upper and lower extremities, cervical pain on range of motion,

"good" shoulder range of motion, and denied numbness, tingling, and weakness. However, pain on

cervical range of motion is consistent, not inconsistent, with Dr. Templin's opined limitations.

Also, the ALJ only discussed Plaintiff's upper and lower extremity strength when evaluating Dr.

Templin's opined limitation. (AR. 34). Therefore, the Commissioner engaged in post-hoc

rationalization. *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013) (Remanding "because the

ALJ did not employ the [Commissioner's] rationale in his opinion"). Further, neither the

Commissioner nor the ALJ explained the significance of upper extremity strength on examination,

when Dr. Templin opined that Plaintiff could not lift due to pain and limited range of motion.

      The Commissioner maintains that the ALJ did not err in evaluating Dr. Templin's opinion

because "[n]o further articulation is required under the revised regulations." However, 20 C.F.R. §

404.1520c states that "[t]he most important factors we consider when we evaluate the

persuasiveness of medical opinions and prior administrative medical findings are supportability

…and consistency. We will articulate how we considered the medical opinions and prior

administrative findings in your claim." *See Kaehr v. Saul*, No. 3:19 CV 1171 PPS, 2021 WL 321450, at *4 (N.D. Ind. Feb. 1, 2021) (The ALJ erred by failing to discuss the supportability of the treating doctor's opinion "as required by the regulations").

      The Commissioner claims that the ALJ did not err by failing to discuss the supportability and consistency of Dr. Templin's opinion because he "acknowledged" this evidence favorable to Plaintiff's claim in summarizing the record. However, 20 C.F.R. § 404.1520c requires the ALJ to "consider," not merely acknowledge, evidence that supports or is consistent with medical opinions. A summary of evidence does not replace meaningful analysis of evidence. *Young v. Secretary of Health and Human Services,* 957 F.2d 386, 393 (7th Cir. 1992) (Remanding because "the Council did not explicitly reject claimant's evidence"). The ALJ was not permitted to make conclusions untethered from the evidence. *See Cleotilde D. v. Saul*, No. 18 C 7224, 2021 WL 428823, at *5 (N.D. Ill. Feb. 8, 2021) ("we do not know how the ALJ weighed the evidence, and therefore, the Court cannot determine whether the ALJ's conclusions are logical and reasonably supported by the evidence").

      Clearly, remand is warranted on the issues relating to the ALJ's evaluation of Dr. Templin's medical opinion.

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED

AND REMANDED for further proceedings consistent with this Opinion.


Entered: June 14, 2021.


<u>s/ William C.  Lee</u>
William C. Lee, Judge
United States District Court

23